CASE 109.—ACTION BY W. C. GORMLEY AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY FOR INJURY TO A HORSE IN UNLOADING IT FROM ITS CAR.—April 24, 1908.

## L. & N. R. R. Co. v. Gormley:

Appeal from Madison Circuit Court.

Judgment for plaintiff, defendant appeals.—Reversed.

1. Railroads—Shipment of Stock—Pleadings, Proof, Instructions.—In this action by appellee against appellant for injury to a horse in shipment, the only issue made by the pleadings, outside of the extent of the injury, was as to whether it was received by the horse in being removed from the car, or in being caused to jump from the platform to the ground, and the trial judge refused to instruct upon this point, and made the case turn upon an issue which was not raised by either pleadings or proof. This was error.

2. Same.—Appellee was entitled to recover, if at all, for an injury which was the direct cause of the accident, and in order to ascertain the extent of the injury, it would be competent to show the condition of the horse immediately after the accident and following it down to the date of the trial.

BENJAMIN D. WARFIELD, J. A. SULLIVAN and JOHN T. SHELBY for appellant.

SMITH & SMITH for appellee.

OPINION OF THE COURT BY JUDGE LASSING—Reversing.

In September, 1906, the appellee W. C. Gormley shipped a horse from Richmond, Kentucky, to Harriman, Tennessee. The point of destination was beyond the lines of the appellant company and upon the Southern Railway. The car containing the horse was carried by the appellant company to a point called "Coal Creek," on its line, where the appellant company connects with the Southern Railway Company, but, for some reason unexplained in the record, the Southern Railway refused to receive the car containing the horse and appellee had either to unload the horse and re-ship it in a car of the Southern Railway Company, or, else have the car shipped back to Jellico on the appellant company's line, a distance of some thirty or forty miles, where the car itself could be transferred to and would be received by the Southern Railway Company for transportation on to its destination, Harriman, Tennessee. There were no cattle pens at Coal Creek, and no chute or other facility for the loading or unloading of stock from cars. The platform at the depot was about the same height as the floor of the car, but was some four or five feet from the edge of the car, so that, if the horse was to be unloaded from the car at that point, it could only be done by bridging this distance, and then by improvising some means to get the horse from the platform to the ground.

There is no difference or dispute between appellant and appellee as to the facts connected with this case about the shipment until the Southern Railway refused to receive the car containing the horse from the L. & N. R. R. Co. Appellant insists that it thereupon notified the man in charge of the horse that the Southern Railway Company would not receive the car and that they would have to carry it back to Jellico, at which point the Southern Railway would

receive it, as they had no facility for unloading the horse there. Whereas, appellee contends that when the car reached Coal Creek his agent and servant in charge of the horse was directed to unload or remove said horse from the car as the Southern Railway would not receive the shipment, and that. in compliance with the orders of and under the direction and supervision of its station agent, the horse was unloaded from the car, and, while being so unloaded was injured.

Appellant alleges that when it offered to take the horse back to Jellico, the man in charge thereof objected on the ground that this would occasion a considerable delay and proceeded to make arrangements to unload the horse so that it could be re-shipped over the Southern Railway. That he improvised a bridge from the car to the depot platform, and forced the horse out over same and then caused the horse to jump from the platform to the ground, a distance of four or five feet, thereby causing the injury, if any, complained of.

It is not charged that the horse was injured in any wise during the trip from Richmond to Coal Creek, so that any injury which resulted to him must have occurred while he was being unloaded from the car to the platform or jumped from the platform to the ground. The answer charges that it was the duty of the appellee to load and unload the horse. That the only duty that appellant had to perform in connection therewith was to furnish the necessary hands or assistants. The reply admits that it was the duty of appellee to unload the horse and it is not denied that appellant furnished all the help that was needed to properly do so.

The whole case, so far as the question of appellant's negligence is concerned turns upon the point

as to whether or not appellee voluntarily undertook to take the horse from the car at Coal Creek, or whether he did so under the order and direction of appellant. It is admitted that appellant company had no suitable means at Coal Creek for loading or unloading stock, in fact it had no means at all for doing so. The only way that it could be done was the way in which it was attempted to be done, to-wit: by taking some scantling and improvising a bridge from the car-door to the platform and from the platform to the ground. It seems that with the aid and assistance of two or three helpers the distance between the car and the platform was bridged, but that no effort was made to provide a means for taking the horse from the platform to the ground, and that the man in charge thereof caused him to jump to the ground. Whether the injury, if any, was received by the horse in being removed from the car to the platform or in being caused to jump to the ground is not clear.

The only issue made by the pleadings, outside of the extent of the injury, was that above indicated. All of the proof taken was directed along this line, but the trial judge refused to instruct the jury upon this point, although requested to do so, and made the case turn upon a question which was not put in issue by either the pleadings or the proof, and of this ruling the appellant complains.

Under its contract and agreement to transport this horse from Richmond, over its line and the line of its connecting carrier, to Harriman, Tennessee, it was the duty of appellant, to provide a suitable car in which to ship the horse, and after having received it, to transport it to its destination safely and without unreasonable delay. For any failure on its part to do so it would be liable to appellee for such damages

as he sustained thereby. If, in the course of such shipment, it carried the horse out of the way so as to cause an unusual and unnecessary delay in the shipment, and, by reason thereof appellee's horse was injured, or appellee was prevented from keeping his horse's engagements in the trots or races in which he was entered, if the purposes for which he was being shipped were known to appellant, then appellant would be liable to appellee for such damage as he sustained thereby. But, the fact that the horse was carried out of the usual way or course of shipment and his delivery at the point or destination was materially and unnecessarily delayed would not warrant or authorize appellee in removing him from the car at a place where no suitable means was provided for such removal and run the risk of injuring him. And if appellee or those in charge of the horse, representing him, did so without the consent of appellant then appellant should not be held liable for any injury which the horse may have received while being thus removed from the car. The company pleaded that it stood ready, willing and able to perform its contract, and that had it been permitted to do so it would have safely delivered the horse at its destination. That while the horse was in its care and custody and it was permitted to exercise control over it, it was uninjured, but that the man in charge thereof and without its consent and over its objection, insisted on taking the horse from the car at Coal Creek, although he knew and understood that the company was provided with no suitable means for unloading it at that point; and that while appellee's agent was so unloading the horse, it was injured.

Appellant insists that for this injury it is in no wise liable, but that it was due solely to the act of appellee's agent, the man in charge of the horse. We

are of opinion that appellant is correct in its contention that this issue should have been presented to the jury by appropriate instruction. We are further of opinion that the pleadings in this case warranted the presentation of no other issue than this, outside of the question of the extent of the injury, if any, which the horse received. The question of the suitableness or unsuitableness of the means provided for unloading live stock at Coal Creek was not in issue, and should not have been presented to the jury at all, for it was expressly admitted that the company had, at that point, no facilities whatever for the loading of unloading of live stock, and the company expressly denied that it attempted to or authorized the said horse to be unloaded at that point.

Appellant also complains of instruction number one, as given by the court because it did not clearly instruct the jury on the measure of appellee's damage, if any. The objection being to the use of the word "immediately" before he was injured and "immediately" after he was injured. Technically construed this instruction is, perhaps, objectionable, but it was more favorable to appellant than otherwise, for strictly construed it limited the damages to such injury as was ascertainable immediately after the accident, whereas appellee was entitled to recover, if at all, for all injury which was the immediate or direct result of the accident, and, in order to properly ascertain the extent of this injury it would be competent to show the horse's condition, not only immediately after the accident, but following same down to the date of the trial.

For the reasons given the judgment of the lower court is reversed and cause remanded, for further proceedings consistent with this opinion.